Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Hartford Specialty Risk Services as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable back injury on April 6, 1993, as a result of which the parties entered into a Form 21 Agreement. The plaintiff received temporary total disability benefits from April 13, 1993 through August 2, 1993, and temporary partial disability benefits from August 2, 1993 through October 11, 1993.
5. The plaintiff was released to return to work on October 11, 1993, and returned to work for the defendant on or about that date.
6. An Order of Dismissal Without Prejudice was entered into the record on March 19, 1996 by Executive Secretary Tracey Weaver.
7. The plaintiff came out of work beginning March 7, 1997, and he was released to return to work on July 21, 1997 by Dr. Ranjan Roy with work restrictions of minimal twisting and bending, no lifting over twenty-five pounds, and use of a back brace.
8. The plaintiff filed a Form 33 Request for Hearing on March 13, 1997.
9. The plaintiff requested a change of treating physician in the Form 33 and by letter dated March 18, 1997, which the defendant denied by letter dated April 2, 1997.
10. The defendant filed a Form 33R, Response to Request for Hearing on April 3, 1997, and filed an amended response on June 5, 1997, both of which are incorporated herein as if fully set forth.
11. Dr. Roy released the plaintiff to return to work starting July 21, 1997. Dr. Roy restricted the plaintiff to wear a back brace, perform only light work with minimal twisting and bending, no lifting more than twenty-five pounds.
12. The plaintiff returned to work for the defendant on July 21, 1997.
13. On September 25, 1997, Dr. Roy found the plaintiff had reached maximum medical improvement and retained a thirty-five percent permanent partial impairment rating to his back.
14. The plaintiff's average weekly wage was $406.00, which yields a compensation rate of $270.68 per week.
15. The issues for determination are:
a. Whether the plaintiff experienced a compensable change of condition since October 11, 1993 when he returned to work.
b. Whether the plaintiff should be permitted to change his treating physician.
c. Whether the plaintiff is entitled to temporary total disability compensation for the period form March 6, 1997 through July 21, 1997.
d. Whether the plaintiff is entitled to any further benefits under the Act, including an assessment of attorney's fees and interest.
e. Whether the plaintiff's current condition, disability from employment and need for medical treatment, if any, is due solely to a pre-existing condition which has not been exacerbated by any injury or work-related activity with the defendant.
16. From March 14, 1997 through June 12, 1997, plaintiff received $150.00 per week through an employer-sponsored disability plan. In the event plaintiff is entitled to receive additional benefits in this claim, defendant would be entitled to a credit.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a forty-nine year old Mexican native. He has been a resident of the United States since 1979, and is able to understand and speak English, although he cannot read English.
2. The plaintiff began working for the defendant-employer in 1987, and he speaks in English with his coworkers, supervisors, the plant nurse, and his girlfriend-roommate. His girlfriend does not speak Spanish.
3. Following the admittedly compensable injury, the plaintiff was diagnosed with a back strain by Dr. Thomas S. Long, his family doctor. Diagnostic testing revealed a degenerative pars defect and spondylolisthesis.
4. After the plaintiff continued to complain of pain, Dr. Long referred plaintiff to neurologist Dr. Saul Schwartz on May 20, 1993. Dr. Schwartz told plaintiff he did not have a disc herniation; however, he did find plaintiff had bilateral pars defects. A lumbar corset and physical therapy were ordered.
5. Dr. Schwartz referred the plaintiff to orthopaedic surgeon Dr. David Ross on June 3, 1993. The plaintiff complained of left-sided low back pain with occasional radiation of pain in the left leg extending to the calf. Dr. Ross diagnosed plaintiff with an underlying Grade 1 lumbar spondylolisthesis. Work hardening was ordered.
6. On June 16, 1993, the plaintiff began work hardening at Thomasville Physical Therapy. A functional capacity evaluation completed on July 23, 1993, found plaintiff able to lift and carry forty pounds.
7. The plaintiff returned to light duty work for four hours per day on or about August 3, 1993. By October 11, 1993, the plaintiff had resumed full time work.
8. On October 6, 1993, plaintiff was seen by orthopaedic surgeon Dr. H. Boyd Watts, who found that plaintiff's spondylolysis was a congenital condition which was likely present since birth. Dr. Watts released the plaintiff on November 1, 1993 with the expectation that plaintiff might experience some back problems in the future as a result of the congenital spondylolysis.
9. As of November 29, 1993, Dr. Long found plaintiff's back strain had resolved. Any symptoms which plaintiff experienced at that time were related to his pre-existing spondylolisthesis at L4-5 and spondylolysis, and not due to the back strain.
10. On November 19, 1993, plaintiff sought chiropractic care from Dr. H. L. Kwan who provided treatment through January 14, 1994, at which time the plaintiff was found to be symptom-free and at maximum medical improvement.
11. The plaintiff returned to Dr. Watts on March 15, 1994 with complaints of back pain which were related to the spondylolisthesis. As of August 3, 1994, Dr. Watts found plaintiff to be at maximum medical improvement with no permanent partial impairment as a result of the work-related back strain.
12. The plaintiff continued to work until early 1995 with no back complaints. After the plaintiff went to plant nurse Debra Owens with complaints of back pain, Ms. Owens arranged an examination by Dr. Watts on February 23, 1995. Plaintiff had a facet problem at L4-5 which is related to the spondylolisthesis and unrelated to the prior work-related injury. A back brace was recommended; however, the plaintiff refused to wear the brace. A repeat CT scan on March 23, 1995 showed no significant change from the 1993 scan results.
13. On June 26, 1996, plaintiff was seen by orthopaedic surgeon Dr. Stephen Furr, where plaintiff's EMG and nerve conduction studies were found to be within normal limits.
14. The plaintiff received treatment for plantar fascitis, which was unrelated to the work-related injury.
15. On February 26, 1997, plaintiff began treatment with Dr. Ranjan Roy, a neurosurgeon. The plaintiff complained of back pain with bilateral lower extremity radiation. This is the first instance at which plaintiff reported right leg symptoms. An MRI of the lumbar spine on February 26, 1997 revealed a bilateral pars defect at L4, spondylolisthesis graded at 25 percent, and disc material pushing into the opening of nerve exits. The disc problem was not present on prior diagnostic testing.
16. Dr. Roy performed a decompression at L4-5, removal of the disc on both sides, and a fusion on plaintiff on March 19, 1997. The cause of the plaintiff's disc herniation was the slippage of the vertebrate of the spondylolisthesis caused by the bilateral pars defect.
17. Following a functional capacity evaluation on July 7, 1997, plaintiff was released to return to light work lifting no more than 25 pounds with minimal twisting and bending.
18. The plaintiff returned to work on July 23, 1997 to a job suitable to his restrictions.
19. On September 5, 1997, plaintiff was at maximum medical improvement with a thirty-five percent permanent functional impairment to his back.
20. On November 11, 1997, Dr. Watts provided a second opinion on the rating.
21. The herniated disc and spondylolisthesis for which the plaintiff sought treatment in February of 1997 were not caused or aggravated by the back strain which plaintiff sustained on April 6, 1993, and which resolved by January 14, 1997 when plaintiff reached maximum medical improvement. Plaintiff's complaints of back pain due to spondylolisthesis were unrelated to the back strain.
22. The bilateral pars defect and resulting spondylolisthesis are congenital back conditions which pre-existed the plaintiff's 1993 back strain episode.
23. Plaintiff's disc herniation is causally related to the pars defect and resulting spondylolisthesis.
24. Based upon the competent medical evidence in the record, there is no evidence that plaintiff's congenital back defects were aggravated by the compensable back strain. Rather, the competent medical evidence shows that the congenital slipping of plaintiff's vertebrae caused the disc herniation for which plaintiff sought treatment in 1997.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The plaintiff bears the burden of proof to establish a causal relationship between the disability and an injury. To establish causation the evidence presented must be such as to take the case out of the realm of conjecture and remote possibility. Gilmore v. Board of Education, 222 N.C. 358,23 S.E.2d 292 (1942). Competent medical expert opinion is necessary to establish a causal connection between any disability and the original compensable injury. Click v. FreightCarriers, 300 N.C. 164, 265 S.E.2d 389 (1980). In the instant case, the plaintiff has failed to carry the burden of proof to establish by competent medical evidence that his disc herniation was caused by the compensable 1993 back strain. Therefore, plaintiff is not entitled to additional benefits under the Act.
2. As the plaintiff is not entitled to any further benefits under the Act, and as any medical treatment was not causally related to the prior compensable injury, the Commission does not address plaintiff's request to change his treating physician.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for additional benefits under the Act, and the same must be, DENIED.
2. Each side shall pay its own costs.
This the ___ day of June 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
S/_____________ DIANNE C. SELLERS COMMISSIONER
LKM/bjp