ELIZABETH EDMONDS, Employee-Plaintiff v. FRESENIUS MEDICAL CARE, Employer SELF-INSURED (RSKCO, Servicing Agent), Defendant

No. COA03-1044

(Filed 17 August 2004)

**Workers' Compensation— medical causation—expert testimony—highest probability**

Workers' compensation testimony from a doctor was the result of reasoned medical analysis rather than speculation and supported the findings and conclusions of the Industrial Commission that plaintiff's kidney problems came from medications taken for a compensable injury. Even though the doctor first testified that plaintiff's condition could be attributable to any one of four causes, he went on to systematically analyze those causes and determined that exposure to medications was the cause with the highest probability.

Judge Steelman dissenting.

Appeal by defendant from an opinion and award entered 5 May 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 18 May 2004.

*Randy D. Duncan, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Mel J. Garofalo and Shannon P. Herndon, for defendant-appellant.*

CALABRIA, Judge.

Fresenius Medical Care ("defendant") appeals from an opinion and award of the North Carolina Industrial Commission (the "Commission"), awarding Elizabeth Edmonds ("plaintiff") workers' compensation benefits for a work-related injury that occurred on 6 February 1998. We affirm.

Plaintiff, formerly a director of nursing for defendant, sustained a compensable back injury when she tried to prevent a file cart from overturning. In order to treat plaintiff's injury, plaintiff underwent various surgical procedures and was placed on numerous medications, including morphine administered through a surgically-placed internal pump and oral non-steroidal anti-inflammatory drugs ("non-steroidals"). Plaintiff was evaluated as having a twenty-five percent permanent partial disability rating to her back and as being capable of light duty work. Nonetheless, because of continuing pain and the morphine pump, plaintiff was unable to operate a motor vehicle to travel to and from work.

Further evidence presented to the Commission showed that plaintiff was diagnosed as an insulin-dependent Type I diabetic in 1978. In addition to her diabetes, plaintiff is also hypertensive. Creatinine levels in plaintiff's urine jumped from a normal level of .7 in December of 1997 prior to the compensable injury to an abnormally high level of 1.2 in October 2001 after treatment of her compensable injury with the non-steroidals. Dr. W. Patrick Burgess ("Dr. Burgess"), an internist and nephrologist, explained that the increasing creatinine levels in plaintiff's urine indicated reduced renal function.

Plaintiff filed for workers' compensation benefits for back and urological injuries due to the accident on 6 February 1998. Although defendant initially admitted plaintiff's right to compensation, on 22 May 2001, defendants requested a hearing on whether termination of benefits was proper on the grounds that suitable employment had been found for plaintiff. In plaintiff's response, plaintiff requested a "determination if [plaintiff's] diabetes, urological and other conditions have been caused or aggravated by the injury at work and treatment, and whether defendants are responsible."

**EDMONDS v. FRESENIUS MED. CARE**

[165 N.C. App. 811 (2004)]

In an opinion and award filed 23 August 2002, the deputy commissioner concluded defendant failed to prove plaintiff unjustifiably refused suitable employment and plaintiff failed to prove the non-steroidals taken during treatment of her compensable back injury worsened her kidney problems or was the cause of any decrease in her renal function. Both parties appealed, and in an order filed 5 May 2003, the Commission affirmed the deputy commissioner's conclusion regarding whether plaintiff unjustifiably refused suitable employment. However, the Commission went on to conclude, based in part on the deposition testimony of Dr. Burgess, that plaintiff had "proved by the greater weight of the evidence that the non-steroidal medications taken by plaintiff because of her compensable back injury worsened or exacerbated her pre-existing kidney problems." Defendant appeals.

On appeal, defendant asserts the Commission erred in concluding plaintiff's pre-existing kidney problems were worsened or exacerbated by the non-steroidals taken as part of her treatment for the compensable back injury. Specifically, defendant contends the Commission's reliance on Dr. Burgess' deposition testimony is misplaced for a number of reasons, including (1) that his opinion regarding medical causation failed to rise to the level of a reasonable degree of medical certainty, was hypothetical and based on assumptions regarding dosage and timing of the non-steroidals and (2) that there were other possible sources other than the non-steroidals that could have caused plaintiff's kidney problems. In short, defendant argues Dr. Burgess' testimony amounted to nothing more than mere speculation which was not sufficiently reliable to rise to the level of competent evidence upon which the Commission's finding of fact, that the non-steroidals taken by plaintiff worsened her kidney problems, could be predicated.

In reviewing the Commission's opinion and award, this Court is limited to determining "(1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). " '[T]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary.' " *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965)).

The employee bears the burden of establishing that his worker's compensation claim is compensable. *Holley v. ACTS, Inc.*, 357 N.C. 228, 231, 581 S.E.2d 750, 752 (2003). Where there exists a reasonable relationship between the injury and the employment, the injury is compensable as work-related. *Id.* "[T]he [employee] must prove that the accident was a causal factor [of the injury] by a 'preponderance of the evidence[.]' " *Id.*, 357 N.C. at 232, 581 S.E.2d at 752 (quoting *Ballenger v. ITT Grinnell Indus. Piping, Inc.*, 320 N.C. 155, 158-59, 357 S.E.2d 683, 685 (1987)). The competency of expert opinion testimony for determinations of causation in complicated medical questions (or those questions above the layman's ordinary experience and knowledge) turns on whether the opinion is based on mere speculation or conjecture. *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 230, 538 S.E.2d 912, 915 (2000). If the opinion is based on mere speculation or conjecture, it is not sufficiently reliable to constitute competent evidence. *Id.* Thus, in *Holley*, our Supreme Court explained that such expert opinion testimony must " 'take the case out of the realm of conjecture and remote possibility' " in order to constitute " 'sufficient competent evidence tending to show a proximate causal relation' " between the injury and the work-related accident. *Holley*, 357 N.C. at 232, 581 S.E.2d at 753 (quoting *Gilmore v. Hoke Cty. Bd. of Educ.*, 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)). Where the expert's opinion is that there "could" or "might" be a causal relationship, it is admissible if helpful for purposes of showing medical causation; however, it is not sufficiently reliable to constitute competent evidence of medical causation, especially if additional evidence suggests such testimony was merely a guess. *Id.*, 357 N.C. at 233, 581 S.E.2d at 753.

In the instant case, the Commission found, in relevant part, as follows:

> Given the evidence of record that renal failure can occur in individuals with a short exposure history to non-steroidal anti-inflamatories, and Dr. Burgess's testimony indicating a possible link between plaintiff's worsening renal condition and her use of non-steroidal anti-inflamatories, the Full Commission finds that plaintiff's use of such medication to treat her back injury more likely than not worsened or exacerbated her pre-existing kidney problems.

The Commission went on to conclude plaintiff proved by the greater weight of the evidence that the exposure to non-steroidals

was the medical cause of her deteriorated renal function and awarded compensation.

Dr. Burgess testified that plaintiff's renal insufficiency could possibly be attributable to any one of four causes: (1) diabetes, (2) hypertension, (3) exposure to non-steroidals, and (4) a combination of the preceding three possibilities. Dr. Burgess defined "possible" as something that was "not out of the realm of being something we see happening." He also gave conflicting testimony regarding his familiarity with the timing and dosage of the non-steroidal treatment administered to plaintiff. Standing alone, such testimony clearly lacks sufficient reliability to constitute competent evidence of medical causation under *Holley*.

Nonetheless, later in his testimony, Dr. Burgess clarified his earlier testimony regarding the possibilities of medical causation as follows:

> One of [hypertension, diabetes, the exposure to the non-steroidals, or some combination] is the most likely. . . . What's against the hypertension is, the length of time of hypertension hasn't really been long enough to be hypertension. What's against the diabetes is, the findings of a fairly normal sized or even small kidney and little or no protein in the urine are both indicators that she does not—it is probably not diabetic nephrosclerosis. Now, she has in her history had a period of time when she had protein in her urine, but my explanation for that is, both of those times when she was told she had protein in her urine, her diabetes was out of control, and diabetes out of control does induce proteinuria or protein in the urine. So I think she had protein in her urine a couple times, but those were both related to episodes of high sugar. . . . I think [the exposure to the drugs is] the highest probability.

Moreover, Dr. Burgess testified that renal involvement resulting from "chronic medical illness[es]," such as hypertension or diabetes, would result in creatinine levels that

> would probably continue changing . . . . The fact that they took a step change is probability wise more in favor of an acute injury; that now the drug has been removed, the injury has been—whatever the injury was, it's there, and it's no longer—the insult is gone, so she's staying the same. That's the more likely explanation.

Finally, Dr. Burgess reiterated that a change in creatinine levels due to exposure to the non-steroidals

> would occur during [the period of time when she was taking the non-steroidals] and when the drug is removed, then there would be possibility of a little improvement and then stabilization. If it was diabetes [or hypertension] . . . I would expect . . . just a slow progression . . . . That's just the way they tend to react. It's a systemic disease that's a part of her. If, on the other hand, it's something external to her like an injury, then I would expect there would be a step change and then stabilization, which is sort of how she's acting.

Thus, while Dr. Burgess' testimony is not ideally conclusive, it is clear that Dr. Burgess specifically itemized the possible causes of plaintiff's renal insufficiency, systematically analyzed those causes, and finally determined exposure to the non-steroidals was the cause that had the "highest probability."

Dr. Burgess similarly clarified his testimony regarding his familiarity with the details of plaintiff's exposure to the non-steroidals. Dr. Burgess stated that, when he first saw plaintiff, he had not researched her exposure to the non-steroidal treatment and did not "have the details or how many months or years [plaintiff had taken the non-steroidals.]" Nonetheless, Dr. Burgess was able to expressly affirm that plaintiff "took the medication over a long enough period of time" based upon the information with which he had been provided. He further testified that if plaintiff "came back and told [him] it was only for a week, I would have trouble making that association [between the period of exposure to the non-steroidal and the reduced renal function]. But if it had been months or years, then that's another issue."

Thus, while Dr. Burgess indicated an inability to state with a reasonable degree of medical certainty that the non-steroidals were the cause of plaintiff's renal insufficiency, it does not necessarily follow that his testimony was not competent evidence of medical causation. The Commission's reliance on expert testimony regarding medical causation in workers' compensation awards does not, as defendant seems to argue, rise or fall on a doctor's use of the term "reasonable degree of medical certainty." Rather, under Holley, "could" or "might" testimony, standing alone, is insufficient to show medical causation, especially where there exists additional evidence tending to show the expert's testimony is merely speculation or conjecture. However, in the instant case, the expert testimony consisted of more than "could"

or "might" testimony, and additional evidence tended to show that Dr. Burgess' testimony was the product of a reasoned medical analysis as opposed to mere speculation. Accordingly, Dr. Burgess' testimony constituted competent evidence supporting the findings of fact by the Commission, which, in turn, supported the conclusion of law that plaintiff proved "by the greater weight of the evidence that the non-steroidal medications taken by plaintiff because of her compensable back injury worsened or exacerbated her pre-existing kidney problems." Defendant's assignments of error are overruled.

Affirmed.

Judge WYNN concurs.

Judge STEELMAN dissents.

STEELMAN, Judge dissenting.

I must respectfully dissent from the majority opinion based upon the holdings of our Supreme Court in *Holley v. ACTS, Inc.*, 357 N.C. 228, 581 S.E.2d 750 (2003), and *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 538 S.E.2d 912 (2000).

In reviewing findings of fact of the Industrial Commission (the "Commission"), our standard of review is to determine whether those findings are supported by competent evidence. *Faison v. Allen Canning Co.*, 163 N.C. App. 755, 751, 594 S.E.2d 446, 448 (2004). If so, then they are binding on appeal, even though there was evidence to support contrary findings. *McRae v. Toastmaster*, 158 N.C. 70, 75, 579 S.E.2d 913, 916 (2004). It is not the role of the appellate courts to sift through the evidence and find facts that are different from those actually found by the Commission.

In this case, Dr. Burgess's testimony on medical causation was conflicting. The Industrial Commission made the following findings of fact causally connecting plaintiff's treatment with non-steroidal anti-inflammatory drugs to her renal failure:

19. Dr. Burgess testified that plaintiff's exposure to the non-steroidal anti-inflammatory drugs, "possibly" or "could or might" have worsened plaintiff's kidney function. Dr. Burgess could not say that it was probable; he could only say that it was possible. He stated he could not give an opinion, to a reasonable degree of medical certainty, without knowing all the information surround-

ing the drugs. Dr. Burgess testified that plaintiff's kidney disease could be attributed to a number of factors, including diabetes, hypertension, a drug source injury, or a blunt trauma injury. Finally, Dr. Burgess testified that because plaintiff had both diabetes and hypertension, she is more likely to need dialysis.

20. Given the evidence of record that renal failure can occur in individuals with a short exposure history to non-steroidal anti-inflamatories, and Dr. Burgess's testimony indicating a possible link between plaintiff's worsening renal condition and her use of non-steroidal anti-inflamatories, the Full Commission finds that plaintiff's use of such medication to treat her back injury more likely than not worsened or exacerbated her pre-existing kidney problems.

Based upon these findings, the Commission concluded that plaintiff showed, by the greater weight of the evidence, that the non-steroidal medications taken to treat her compensable back injury exacerbated her pre-existing kidney problems.

In *Holley* our Supreme Court stated:

Although expert testimony as to the *possible* cause of a medical condition is admissible if helpful to the jury, it is insufficient to prove causation, particularly "when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation."

*Holley*, 357 at 233, 581 S.E.2d at 753 (internal citations omitted).

In this case, the only medical testimony linking the administration of non-steroidal anti-inflammatory drugs to plaintiff's reduced renal function was that of Dr. Burgess. As found by the Commission, his testimony was only that the drugs "possibly" or "could or might" have caused plaintiff's renal problems. Further, the Commission found that Dr. Burgess could not give an opinion to a reasonable degree of medical certainty on causation. This testimony does not rise above a guess or mere speculation and does not meet the requirements set forth in *Holley. Id.*

Clearly, the Commission recognized the weakness of Dr. Burgess's testimony and attempted in finding of fact twenty to buttress his opinion with testimony of other witnesses that a short exposure to non-steroidal anti-inflamatories can result in renal failure. The Commission thus attempted to link together the testimony

of several expert witnesses and render its own medical opinion that the medications "more likely than not worsened or exacerbated her pre-existing kidney problems." Further, Dr. Burgess also testified that a short exposure to non-steroidal anti-inflamatories can result in renal failure yet he did not reach the same conclusion as the Commission. It is not the role of the Commission to render expert opinions. In cases involving complex medical questions, only an expert can give opinion evidence as to the cause of an injury. *Holley*, 357 at 232, 581 S.E.2d at 753.

I would hold that plaintiff has failed to prove that her loss of renal function was causally related to the administration of non-steroidal anti-inflamatories. Without that causal link, the kidney injuries did not arise out of a compensable injury and she is not entitled to compensation for those injuries under Chapter 97.