***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission reverses the Opinion and Award of Deputy Commissioner Glenn.
 *********** *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties before Deputy Commissioner Glenn as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employment relationship existed between the plaintiff-employee and the defendant-employer at all relevant times herein.
3. Defendant-employer was an approved self-insured with Key Risk Management Services acting as its third party administrator at all relevant times herein.
4. Plaintiff's average weekly wage was $451.23 per week, yielding a compensation rate of $300.84 per week.
5. Plaintiff sustained an admittedly compensable injury by accident while in the course and scope of employment with defendant-employer on January 25, 2002 when she tripped and fell fracturing her right hip. Defendant filed a Form 60 on or about February 19, 2002 admitting decedent's right to recover worker's compensation benefits as a result of her fall.
6. Plaintiff was admitted to Frye Regional Medical Center for back surgery on February 23, 2005 and she died on February 26, 2005.
7. The following exhibits were admitted into evidence at the hearing:
 a. stipulation #1, plaintiff's medical records;
 b. stipulation #2, Mr. McFalls' medical records; *Page 3 
 c. stipulation #3, plaintiff's medical records, forms and discovery;
 d. plaintiff's exhibit #1, Form 21 dated November 4, 2005;
 e. plaintiff's exhibit #2, Form 21 dated September 2004;
 f. plaintiff's exhibit #3, Letter from Angela Barber to Tammy Leggins dated September 27, 2004;
 g. plaintiff's exhibit #4, Form 60;
 h. plaintiff's exhibit #5, Form 19; and,
 i. plaintiff's exhibit #6, Letter from Angela Barber to Tammy Leggins dated September 23, 2004.
8. The issues to be determined from this hearing are as follows:
 a. Whether decedent's death was caused by her admittedly compensable injury by accident?
 b. If so, to what, if any, workers' compensation benefits is decedent's estate entitled to recover under the North Carolina Workers' Compensation Act?
 c. Whether decedent's estate is entitled to recover the payment of the permanent partial disability rating decedent had been given as a result of the admittedly compensable injury by accident?
 d. If so, whether defendants would be entitled to a credit or off-set for benefits heretofore paid to decedent?
 ***********
The Pre-Trial Agreement along with its attachments and any additional stipulations are hereby incorporated by reference as though they were fully set out herein.
 *********** *Page 4 
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. Decedent was born on April 26, 1942. In approximately 1988, decedent began working for defendant-employer as a developmental technician.
2. Decedent had a history of back pain beginning in approximately December 1996 for which she saw Dr. Plyler, her family physician.
3. Decedent continued to work despite her back problems but saw Dr. Plyler again in February, 2000, complaining of severe back pain. Decedent's MRI findings on February 23, 2000 showed lumbar spondylosis with a broad-based disc bulge at L4-5 and severe central canal bilateral foraminal stenosis. Dr. Plyler's notes from that date indicate that decedent was walking with a limp and favoring her left leg.
4. Throughout 2000 and 2001, decedent continued to have chronic back pain but continued to work. Her medical providers attempted conservative pain treatments with limited relief but ultimately, her back pain did not improve, and she consulted in August 2001 with Dr. David Jones, M.D., of Piedmont Neurosurgery. After reviewing decedent's radiology reports in September 2001, Dr. Jones recommended back surgery. On October 7, 2001, Dr. Jones performed a bilateral L4-5 decompression and left sided discectomy.
5. Decedent had post-operative visits with Dr. Jones on October 17, November 6, and December 12, 2001. Dr. Jones' reports indicate that decedent was doing well, although she continued to have occasional discomfort around her left SI joint.
6. On January 7, 2002, decedent returned to full duty work with defendant-employer for approximately three weeks. *Page 5 
7. On January 25, 2002, while at work for defendant-employer, decedent lost her balance and fell on a tile over concrete floor, resulting in a right intertrochanteric hip fracture. Immediately after her fall, decedent was transported by emergency medical services (EMS) to Grace Hospital in Morganton, North Carolina. The EMS records indicate that decedent's chief complaint was pain in her right hip and that she denied any secondary complaints.
8. Following an examination by a doctor in Grace Hospital's emergency room, Dr. Myron Smith performed an open reduction internal fixation on decedent's right hip.
9. Dr. Smith saw decedent post-operatively and there is no indication that decedent complained of back pain. Dr. Smith testified that generally, if he is consulted for a hip fracture or a fall, he always asks the patient on the first and second days that he sees them, and oftentimes again, if that is the only place that hurts.
10. Following decedent's surgery, Dr. Smith continued to see and treat decedent. At every examination Dr. Smith asked decedent whether she was having any pain, and he would have indicated any reported pain in his notes. Dr. Smith's records contain no indication that decedent was experiencing back pain.
11. Dr. Smith opined that decedent's hip surgery went well, although she did have a persistent antalgic gait or limp which was not severe. On August 12, 2002, Dr. Smith found decedent to be at MMI and released her with a 15% permanent impairment rating.
12. Dr. Smith treated decedent again from September 6, 2002 through December 13, 2002 for a stress fracture to her right foot which was unrelated to her workers' compensation injury. At that time, Dr. Smith placed decedent in a short-leg cast which would have changed decedent's gait. There is no indication in Dr. Smith's notes relating to the treatment of decedent's stress fracture to her right foot that decedent was experiencing back pain. *Page 6 
13. Decedent's last medical compensation for her January 25, 2002 work injury was paid on January 22, 2003.
14. Subsequent to her non-work related right foot fracture, decedent treated with Dr. Plyler, her family physician for pain in her right foot. Dr. Plyler opined that the stress fracture to decedent's right foot could have aggravated her back if it affected her gait. On January 31, 2003, Dr. Plyler noted that decedent was walking with a limp.
15. On August 24, 2004, decedent presented to Dr. Plyler with back complaints which were similar to those for which she had presented to him prior to her first back surgery in 2001. An x-ray report dated August 24, 2004 showed severe degenerative disease which had progressed since 2000, and which was consistent with the typical progression of Plaintiff's disease.
16. In September 2004, decedent was referred to Dr. David Jones, who had performed her first back surgery in 2001, for complaints of back pain. Decedent informed Dr. Jones that her back pain at that time was very similar to that which she had experienced prior to her L4/5 decompression surgery in 2001.
17. Prior to undergoing her second back surgery, decedent underwent a series of SI joint injections in October, November and December of 2004 which provided only short term pain relief. In January 2005, Dr. Jones recommended that decedent have a second back surgery.
18. On February 22, 2005, decedent was admitted to Frye Hospital for an L4-5 bilateral decompression, discectomy, posterior lumbar interbody fusion, and pedicle screw instrumentation. The surgery, which was performed on February 23, 2005, went well. *Page 7 
19. After the surgery was completed, decedent began experiencing respiratory difficulties with developing pneumonia, and rapidly became septic. Dr. Jones opined that decedent had aspiration pneumonia, related to a large hiatal hernia.
20. Decedent's estate filed a Form 33 approximately four years after her last medical bill was paid, and approximately two years after her death, seeking medical and indemnity compensation as a result of her death. Defendant denied the claim on the basis that decedent's surgery and subsequent death were not causally related to the work injury.
21. The competent credible evidence of record fails to show a causal connection between decedent's January 22, 2005 workers' compensation injury and her February 23, 2005 back surgery and/or death.
22. Dr. Jones, who performed both of decedent's back surgeries, opined in his September 10, 2004 medical records and again in a note dated October 15, 2004, that decedent's back pain may be related to two factors, the progression of degenerative disease of decedent's spine, and increasing mechanical low back pain which was secondary to her degenerative disc disease.
23. Dr. Sexton, who was board certified in pain management and board eligible in neurosurgery at the time of his deposition, opined that decedent's January 25, 2002 work related accident could not have aggravated a pre-existing back condition such as decedent's.
24. Dr. Smith opined that decedent's compensable injury by accident while in the course and scope of her employment with defendant-employer on January 25, 2002 was a causal factor in the development of decedent's back problems and her limp, and that her limp and the fall exacerbated her back problems. Dr. Smith further opined that decedent died as a result of sepsis and other complications from her back surgery which had been required as a direct result *Page 8 
of her compensable injury by accident on January 25, 2002. However, the credible medical evidence shows that decedent had a history of limping prior to and following her January 25, 2002 work related accident.
25. Based on his board certification in neurosurgery, and based on his status as the physician who performed both of decedent's back surgeries, the Full Commission assigns greater weight to the opinions of Dr. Jones regarding any causal link between decedent's January 25, 2002 work related hip injury and her February 23, 2005 back surgery and/or death due to complications therefrom.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On January 25, 2002 decedent sustained an admittedly compensable injury by accident resulting in a right hip fracture. However, decedent's February 22, 2005 back surgery and death were not a result of that injury. N.C. Gen. Stat. § 97-2(6). Under North Carolina law, plaintiff carries the burden of establishing a clear causal connection between the accident and a condition allegedly causing disability.Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Expert testimony is required, and it cannot be based on speculation, mere possibility or purely a temporal relationship between the accident and the condition. Young v. Hickory Business Furniture,353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000). "[T]he evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation between the injury and subsequent death." Gilmore v. Hoke Cty. Bd. ofEduc., 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942) *Page 9 
(discussing the standard for compensability when a work-related accident results in death). In the case at bar, plaintiff failed to meet its burden of establishing a clear causal connection between the January 25, 2002 compensable injury to decedent's hip and her February 23, 2005 back surgery and subsequent death. Therefore, defendant is not obligated to pay disability benefits, medical expenses relating to decedent's February 23, 2005 back surgery and resulting treatment leading up to her death, or burial expenses.
2. Plaintiff is not entitled to payment for a 15% permanent partial disability rating because decedent has already effectively been paid for that rating under N.C. Gen. Stat. § 97-31. N.C. Gen. Stat. § 97-31 specifically states that "[i]n cases included by the following schedule the compensation in each case shall be paid for disability during the healing period and in addition the disability shall be deemed to continue for the period specified, and shall be in lieu of all other compensation, including disfigurement."
Where an employee can show both a disability pursuant to N.C. Gen. Stat. §§ 97-29 or 97-30 and a specific physical impairment pursuant to N.C. Gen. Stat. § 97-31, he may not collect benefits pursuant to both schemes, bur rather is entitled to select the statutory compensation scheme which provides the more favorable remedy. Whitley v. Columbia Lumber Mfg. Co.,318 N.C. 89, 95-96, 348 S.E.2d 336, 340 (1986).
The North Carolina Supreme Court held in Moretz v.Richards Assoc., Inc.,316 N.C. 539, 542, 342 S.E.2d 844, 846-847 (1986), that once a plaintiff reaches maximum medical improvement (MMI), compensation for temporary total disability is terminated. Plaintiff reached MMI on August 16, 2002. Under N.C. Gen. Stat. § 97-31, a hip/leg is equal to 200 weeks of disability. A 15% rating of the leg equals 30 weeks of disability payments. After reaching MMI on August 16, 2002, and continuing until her death on February 26, 2005, *Page 10 
decedent received approximately 130 weeks of temporary total disability payments, well in excess of the 30 weeks she would have received for her 15% rating. Therefore, decedent has already been compensated under the more favorable remedy available, and her estate is not entitled to further compensation for her 15% permanent disability rating.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for disability benefits is hereby DENIED.
2. Plaintiff's claim for payment of medical expenses associated with decedent's February 23, 2005 back surgery and subsequent treatment leading up to her death is hereby DENIED.
3. Plaintiff's claim for burial expenses is hereby DENIED.
4. Plaintiff's claim for recovery of payment of the 15% permanent partial disability rating given to decedent as the result of her admittedly compensable January 25, 2002 accident is hereby DENIED.
5. Each side shall bear its own costs.
This the 27th day of May, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ DANNY LEE McDONALD COMMISSIONER