I must respectfully dissent from the majority's decision that Plaintiff's bipolar disorder is compensable as I do not believe that Plaintiff has met his burden of proving that his condition was exacerbated by his accident of November 26, 2007.
Our Supreme Court has held that to qualify as "competent evidence" of a causal relationship between a work-related accident and a disabling injury, the expert's testimony "must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation." Holley v. ACTS, Inc.,357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (quotingGilmore v. Hoke Cty. Bd. Pf Educ.,222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942)). Furthermore, our appellate courts have held that expert opinion "based merely upon speculation and conjecture" does not constitute competent evidence of causation in cases involving complex medical issues.Faison v. Allen Canning Co.,163 N.C. App. 755, 758, 594 S.E.2d 446, 449 (2004) citingHolley, 357 N.C. at 232, 581 S.E.2d at 753.
In concluding that Plaintiff has met his burden with respect to causation, the Full Commission relies upon the testimony of Drs. Mulkey and Saad. Dr. Mulkey, a licensed psychologist, treated Plaintiff in February of 2005 and did not see Plaintiff again until January of 2008. Her opinion relative to causation is speculative, at best, and is based upon a fact pattern disputed by Plaintiff's own testimony.
Dr. Mulkey's causation opinion may be found on pages 428 through 430 of her April 9, 2009, *Page 12 
deposition:
 Q. When you saw Paul in January of `08, did he give you any kind of history about what he felt caused this decline in his psychiatric condition?
 A. Yes, he said that he had been — he stopped medication and had been doing very well from 2003 — from 2005, I'm sorry, from the time when I stopped seeing him until the time of the accident, and he felt that his — that the — his pain and his bipolar symptoms had returned since the accident.
 . . . . Q. Okay, In your opinion given to a reasonable degree of psychological certainty, did the car accident of November of 2007 aggravate or activate Paul's preexisting psychiatric condition, assuming what the history he gave you was true?
 A. Assuming? Because I hadn't seen him for the years prior to the accident. But assuming that what he told me was true, that he had been doing very well up until the accident and that after the accident he wasn't doing well, given all of that, then yeah, I would I would be led to assume that the accident had been involved in exacerbating his symptoms, but I don't have any personal knowledge of that."
The assumption upon which Dr. Mulkey's opinion is based, namely that what Plaintiff told her about his condition prior to and following the accident was true, is called into question by Plaintiff's own testimony. Specifically, Plaintiff testified that he began working in early 2007, after a three year break in his employment. When asked, "Did you develop or did you become aware of any mental or emotional problems that also prevented you from working for that [sic] three years you were out of work?" Plaintiff responded, "Yes." When asked what had kept him from working Plaintiff responded, "Bipolar." Thus, by Plaintiff's own admission, during a significant period of time between when he last treated with Dr. Mulkey and the time of his accident in November of 2007, he was unable to work due to his bipolar condition. Accordingly, I do not believe that, by any measure, Plaintiff could be said to be doing "very well" during that period, which is the assumption upon which Dr. Mulkey based her causation *Page 13 
opinion.
Dr. Mulkey's note relative to Plaintiff's visit in February of 2005 also calls into question Plaintiff's representation to Dr. Mulkey that he was doing very well from the time she stopped seeing him in February 2005 up until the accident. The note states in pertinent part, "Client reports that his schedule is still not stable and he is not getting sufficient sleep due to fishing trips. He notes that he is sad about his situation and feels stuck."
Dr. Saad is a psychiatrist, who treated Plaintiff beginning in November of 2002. His causation opinion, like that of Dr. Mulkey, is based upon an assumption that Plaintiff was doing well in the three years prior to early 2007. He also went on to explain, however, that bipolar is episodic over the course of a person's life and that a person may say that he is feeling well, which may indicate the person is in the manic phase of the condition. Dr. Saad opined, "You know, when he says he's doing fine, that's how he was feeling, not necessarily how he was. Sometimes in your manic phase you feel good, but you're manic. You're not aware of it. And a lot of people stop medication for this simple reason, that they're feeling good, they're hyper, they're feeling good. . . . So, again, his feeling is not his being. He would say he was feeling well. I have my doubts."
In addition to citing the testimony of Drs. Mulkey and Saad, the majority also cites Plaintiff's ability to manage his disorder on his own and wean himself off his psychiatric medications in support of their conclusion that Plaintiff met his burden of proving causation. Dr. Saad testified, many people with bipolar disorder stop taking their medications on their own because they are in a manic phase and are feeling good. Accordingly, I do not agree that Plaintiff's unilateral decision to direct his own treatment following February of 2005 is competent evidence that he was doing well from that time up until the accident on November 26, 2007. *Page 14 
In conclusion, I believe that the expert medical testimony upon which the majority relies fails to establish competent evidence of causation. As such, Plaintiff's claim should be denied. For the foregoing reasons, I must respectively dissent from the Full Commission's decision in this matter.
This the ___ day of November, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1