The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on the alleged date of injury, March 4, 2002.
3. The employer was insured by ACE/USA on the date of plaintiff-employee's alleged injury by accident.
4. The plaintiff-employee's average weekly wage is $437.81, yielding a compensation rate of $291.87.
5. The following documents were stipulated into evidence:
a. Plaintiff's Medical Records;
b. North Carolina Industrial Commission Forms;
d. Discovery; and
e. Plaintiff's Medical Expenses.
6. Plaintiff is pursuing a claim for a cervical and lumbar spine injury, neck pain and arm pain that he alleges arose out of an accident and/or specific traumatic incident in the course and scope of his employment, which defendants have denied as compensable.
7. Plaintiff contends the issues to be heard are as follows:
 (a) To what amount of temporary total disability benefits is plaintiff entitled due to his on-the-job accident and/or specific traumatic incident;
 (b) To what permanent partial disability benefits is plaintiff entitled due to his on-the-job accident and/or specific traumatic incident or, in the alternative, to what temporary partial disability benefits is plaintiff entitled due to his on-the-job accident and/or specific traumatic incident;
 (c) Whether plaintiff's injury is permanently and totally disabling and if so, to what benefits is he entitled;
 (d) For what medical expenses should defendant reimburse plaintiff as a result of plaintiff's on-the-job accident and or specific traumatic incident;
 (e) Whether further recommended treatment, such as surgery, should be paid for by defendants; and
 (f) Whether plaintiff is entitled to additional benefits such as reimbursement for out-of-pocket payment of medical expenses, prescription medication and reimbursement for mileage?
8. Defendants contend the issues to be heard are as follows:
 (a) Whether plaintiff sustained an injury by accident or specific traumatic incident on March 4, 2002, arising out of and in the course and scope of his employment with defendant-employer; and
 (b) If so, to what benefits, if any, is plaintiff entitled?
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-five years of age. He is a high school graduate with two semesters of college education at Winston-Salem State University. Plaintiff worked primarily in the construction industry.
2. On July 2, 1997, Davis Resource Management, a luxury boat manufacturer, hired plaintiff to work as a carpenter/laborer. His job duties included lifting, moving and placing prefabricated rooms or "modulars" into boats. These modular units were set on wheeled carts and then rolled to the designated place. Plaintiff testified that these wheeled carts roll "pretty easily."
3. After being on vacation Thursday, February 28, 2002, and Friday, March 1, 2002, plaintiff testified that on Monday, March 4, 2002, he sustained an injury to his back while he and six to seven other men moved a modular on a two-wheel trailer. Plaintiff testified that the trailer became wedged between some lumber in the plant and therefore, the men decided to lift the modular. According to plaintiff, upon lifting, he heard a pop in his back, and cried out. Afterward, he went to the break room.
4. No one moving the modular with plaintiff testified at the hearing before the Deputy Commissioner. Instead, Deondre Bowser and Ralph Bryant, former co-workers at defendant-employer, testified. Deondre Bowser testified that he was "standing a ways off" when someone came asking him to help some men move a modular and that before he got there, he "heard Major scream." Mr. Bowser initially thought plaintiff was joking. Ralph Bryant testified that he was not around when the men moved the modular. He saw plaintiff after the alleged incident when plaintiff went into the break room. Mr. Bryant was vague in his testimony. He testified that plaintiff was "in pain" but did not testify that plaintiff had told him specifically about the alleged accident.
5. When plaintiff testified at the hearing before the Deputy Commissioner, he was also vague or said that he did not recall anything on cross-examination that might be adverse to his position that he sustained an injury by accident, particularly regarding inconsistencies with his medical records. Plaintiff did not report the alleged accident to his supervisors and did not mention it when he first sought medical treatment. Defendant-employer's plant closed around August 2002, at which time plaintiff had never reported the alleged accident.
6. Despite plaintiff's account, he failed to report any injury on March 4, 2002, or thereafter, to his team leader, Wayne Ballance; the line manager, Daniel Martin; or to human resources. Plaintiff testified that he knew to report such injuries since he had sustained a prior workers' compensation injury with defendant-employer, had attended a safety and hazard program and received an employee handbook.
7. Mickey Peabody, former human resources representative with defendant-employer, confirmed that plaintiff had not reported a workers' compensation claim on March 4, 2002, or thereafter. Ms. Peabody did not learn of the alleged injury until November 25, 2002, eight months later, when she received correspondence with an Industrial Commission Form 18 (Notice of Accident to Employer and Claim of Employee, Representative, or Dependent for Workers' Compensation Benefits) from plaintiff's counsel. Despite working daily with plaintiff, Mr. Ballance testified that he had no recollection of plaintiff sustaining an injury to his back at work and that plaintiff never reported a work-related back injury.
8. On March 4, 2002, plaintiff presented to Health East Outer Banks Medical Center. According to the Health East triage record, plaintiff reported that he thought he had gout or a kidney infection with low back pain off and on for two weeks, worse that day and mainly in the left flank area. Physician Assistant Phillip Keller of Health East also documented a chief complaint of low back pain for two weeks. More importantly, he noted that plaintiff "does not recall any trauma or over use although [he] is a boat builder." Physician Assistant Keller diagnosed a lumbar sacral strain, prescribed medication and excused plaintiff from work for one week. There is no mention of any cervical complaint or injury in the March 4, 2002, record from Health East.
9. At the hearing before the Deputy Commissioner, plaintiff claimed that his neck started hurting a few days after March 4, 2002. However, there is no indication that he sought or received any medical treatment at that time.
10. About a month later, on April 5, 2002, plaintiff presented to Dr. Myung Kil Jeon, a general practitioner at Washington County Primary Care. Plaintiff complained of headache, vomiting, stomach pain and reported that he had been doing some grinding on his job without a mask. Unlike his complaints of neck and back pain, plaintiff specifically related this illness to an event at work. Plaintiff was diagnosed with acute bronchitis, gastroenteritis, hypertension and insomnia.
11. Despite plaintiff's testimony to the contrary, there is no documented complaint of back pain or a work-related back injury in the April 5, 2002, notes. In fact, in his physical examination, Dr. Myung Kil Jeon documented the back as "none tenderness, no swelling, no disturbance range of motion." With respect to the neck, Dr. Myung Kil Jeon documented "supple, midline trachea, no JVD, no mass, no thyromegaly, no adenopathy, no carotid bruit, no tenderness, no disturbance range of motion, no swelling."
12. Approximately two weeks later, on April 19, 2002, plaintiff returned to Dr. Myung Kil Jeon. Again, there was no documented report of any back complaints or work-related back injury. Plaintiff complained of gastric trouble with a lot of heartburn. Plaintiff was diagnosed with acute bronchitis and GERD, and peptic ulcer disease was ruled out. Once more, after physical examination, Dr. Myung Kil Jeon noted that the back was "none tenderness, no swelling, no disturbance range of motion." With respect to the neck, Dr. Myung Kil Jeon indicated that the neck was "supple, midline trachea, no JVD, no mass, no thyromegaly, no adenopathy, no carotid bruit, no tenderness, no disturbance range of motion and no swelling." In his deposition testimony, Dr. Myung Kil Jeon testified that if plaintiff had complained about his back or neck, he would have documented it in his office notes.
13. There is no evidence that plaintiff received any medical treatment for his back or neck in the months of May and June 2002. For the first time, on July 1, 2002, three months after the alleged injury, plaintiff complained of neck and back pain on a visit to Dr. Myung Kil Jeon. Plaintiff reported sharp pains in the neck radiating to the lower back with the onset being one week earlier and difficulty walking for the last three days. Plaintiff was initially excused from work until July 3, 2002.
14. There is no report of a work-related back injury in the records of the July 1, 2002, visit with Dr. Myung Kil Jeon. Dr. Myung Kil Jeon further testified that for plaintiff's visits from April 2002 to December 2002, there was no complaint of a work-related injury in his or his nurse's office notes.
15. Plaintiff returned to see Dr. Myung Kil Jeon on August 5, 2002, with continued complaints of muscle pain and neck pain. At that time, Dr. Myung Kil Jeon excused plaintiff from work until he could be seen by a specialist. This was about the time that defendant-employer's plant was closing.
16. On August 29, 2002, plaintiff was examined by Dr. Kevin Good, a neurologist, for pain in the neck and shoulder, which plaintiff reported started about three months prior. Dr. Good assessed neck and shoulder pain with tingling in the left side of the body and back pain of uncertain etiology. Once more, there is no report of an alleged on-the-job back injury occurring in March 2002. Dr. Good testified that plaintiff failed to report any work-related injury to him in August 2002. Further, Dr. Good gave no opinions as to the causation of plaintiff's cervical or lumbar spine condition.
17. Eight months later, for the very first time, on November 25, 2002, plaintiff reported a work-related accident to Dr. Good, who then documented, "there was no mention of an accident in my previous notes nor was there any mentioned in Dr. Myung Kil Jeon's note as well. He said now he did have an accident pulling a cart." On January 21, 2003, Dr. Good referred plaintiff to a neurosurgeon, Dr. Larry Davidson, for consultation.
18. On February 24, 2003, plaintiff reported to Dr. Davidson a history of neck and low back pain with left arm and left leg radiation. Dr. Davidson examined plaintiff and, not having the actual MRI available, reviewed the MRI report. Plaintiff returned to see Dr. Davidson over the next few months. At plaintiff's March 4, 2003, visit, Dr. Davidson had reviewed cervical and lumbar myelograms, which showed multi-level bilateral foraminal stenosis at C3-4, C4-5, and C5-6.
19. On May 19, 2003, Dr. Davidson noted that plaintiff's lumbar MRI done in 2002 was "not overly impressive for any particular specific disc space degeneration, although some degenerative changes are noted." Dr. Davidson did not recommend surgery for plaintiff's lumbar spine.
20. With regard to plaintiff's neck, Dr. Davidson assessed bilateral foraminal stenosis and cervical spondylosis, a degenerative condition, which can occur without trauma. On May 21, 2003, Dr. Davidson performed left C3-4, C4-5 and C5-6 foraminotomies for multilevel cervical spondylosis and foraminal stenosis with secondary left arm pain.
21. On August 5, 2003, Dr. Davidson declared plaintiff to be maximally medically improved with regard to his neck. As to the lower back, he did not recommend surgical intervention since plaintiff's back pain was largely non-mechanical in nature.
22. On September 9, 2003, in response to a letter from plaintiff's counsel and without the benefit of plaintiff's prior medical records, Dr. Davidson related "the job injury of March 4, 2002, as an exacerbating event to pre-exist the degenerative changes of [plaintiff's] cervical and lumber spine." Dr. Davidson further assigned plaintiff an eleven percent (11%) rating for his neck and a seven (7%) percent rating to his low back. At that time, he did not foresee any future surgical indications for plaintiff's condition.
23. At his deposition, on cross-examination and after review of plaintiff's pertinent prior medical records, Dr. Davidson testified, "[g]iven the information that you have given me today, which of course is new information to me, I do not think that I could make a relationship of causation of the accident to the symptoms which he presented to me initially on February 24, 2003." Further, Dr. Davidson testified on cross-examination, "[b]ecause of the apparent delay onset of these symptoms in reference to the on-the-job injury, it would be difficult for me to insinuate or incriminate the injury as an exacerbating event to these symptoms," referring to the neck and back.
24. Following treatment with Dr. Davidson, plaintiff received pain clinic treatment at Pitt Memorial Hospital and also returned a few times to Dr. Myung Kil Jeon. Plaintiff last worked for the defendant-employer on July 29, 2002.
25. Plaintiff was also inconsistent in describing the alleged accident. When he eventually reported the alleged accident to Drs. Good and Davidson, several months after the alleged injury date, plaintiff reported that he was pulling a cart. There was never any mention of lifting. However, at the hearing before the Deputy Commissioner, plaintiff testified that upon "lifting" the modular he heard a pop in his back.
26. Plaintiff was also inconsistent in his response to interrogatories. He denied any prior medical treatment within the past five years. To the contrary, plaintiff had received prior medical treatment within that time, and had specifically been treated for a work-related injury to his finger on December 14, 2001. Plaintiff also denied any criminal history. However, in July 2002, four months after the alleged injury, he pled guilty to possession of drug paraphernalia and driving while impaired.
27. Further, there is insufficient medical evidence to establish that the alleged injury of March 4, 2002, caused or significantly aggravated plaintiff's lower back or neck as to be the precipitating factor for the complaints he ultimately made to Dr. Davidson, and for which Dr. Davidson provided surgery on plaintiff's neck.
28. In weighing the evidence in this case, the Full Commission has considered the inconsistencies in the evidence of record including those that exist between the documentary evidence and the testimony of the witnesses. Considering the greater weight of the evidence of record, the Full Commission finds that plaintiff has failed to prove that he suffered an injury by accident arising out of and in the course of his employment with the defendant-employer on March 4, 2002, or that he sustained a specific traumatic incident of the work assigned on March 4, 2002.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of the evidence. The Commission may accept or reject the testimony of a witness, entirely or in part, and is not required to accept even the uncontradicted testimony of a witness. Gaddy vs. Kern, 17 N.C. App. 680,195 S.E.2d 141 (1973). The Commission decides the weight to be given to a witness' testimony and may reject such testimony completely if warranted by the disbelief of that witness. Jarvis v. Food Lion, Inc.,134 N.C. App. 363, 517 S.E.2d 388 (1999).
2. In order to establish a compensable injury to the back, the plaintiff must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese,92 N.C. App. 222, 224; 374 S.E.2d 116, 118 (1988), disc. reviewdenied, 324 N.C. 337; 378 S.E.2d 799 (1989).
3. Notwithstanding the inconsistencies in plaintiff's testimony, there is insufficient medical evidence to establish a causal connection between the alleged accident of March 4, 2002, and plaintiff's subsequent complaints of back and neck pain Edmonds v. Fresenius Medical Care,
___ N.C. ___ (filed 3/4/05) reversing the prior decision of the Court of Appeals based on the dissent in ___ N.C. Apps. ___, 600 S.E.2d 501 (filed 8/17/04), Holley v. ACTS, Inc., 357 N.C. 228 (2003).
4. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident or specific traumatic incident as a result of the work assigned on or about March 4, 2002, or at any other time. N.C. Gen. Stat. § 97-2(6); Causby v. BernhardtFurniture Co., 83 N.C. App. 650; 351 S.E.2d 106 (1986). Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. § 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be and is hereby denied.
2. The cost of the hearing shall be split between the parties, and each side shall pay one-half of the hearing cost. The defendants shall pay the deposition cost and expert witness fees previously approved. Otherwise, each party shall bear its own incidental cost.
This the __ day of March 2006.
 S/ ___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER