***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Homick, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Insurance coverage existed on the date of injury.
4. Specialty Risk Services was the carrier on the risk for defendant-employer.
5. Plaintiff sustained a compensable injury on July 30, 2004.
6. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Stipulated Exhibit 1: Pre-Trial Agreement;
 • Stipulated Exhibit 2: Plaintiff's Proposed Pre-trial Agreement, Plaintiff's medical records, Disability Forms, Family Medical Leave Act Form, Industrial Commission Forms, and Copies of Checks;
 • Stipulated Exhibit 3: Nine photographs;
 • Stipulated Exhibit 4: Depositions of Drs. Stout, Wood, Adams and Coric;
 • Stipulated Exhibit 5: Medical Records Review — Dr. Summers;
 • Plaintiff's Exhibit 1: April 11, 2009 letter; and
 • Plaintiff's Exhibit 2: April 10, 2009 letter.
 ***********
Deputy Commissioner Homick identified the following:
 ISSUES
1. Did plaintiff sustain a compensable change of condition pursuant to N.C. Gen. Stat. § 97-47? *Page 3 
2. If so, to what benefits is plaintiff entitled?
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Homick, plaintiff was 54 years old. Plaintiff obtained a high school equivalency certificate by passing the General Educational Development (GED) Examination. Plaintiff also obtained a two-year degree in manufacturing engineering technology.
2. Plaintiff was employed as an assembler by defendant-employer, a manufacturer of automotive products in Statesville, North Carolina. Plaintiff worked in various positions for defendant-employer, but her primary job involved assembling heavy equipment components for off-road vehicles. Plaintiff's normal job duties required her to assemble large mechanical parts such as transmissions, clutches, and differentials.
3. Prior to the work injury that is the subject of this claim, plaintiff had complained of neck and back pain to her primary care physician, Dr. Elmer H. Stout, in October 1996, July 2003, and October 2003.
4. Plaintiff had also presented to Dr. Ronald E. Adams, a chiropractor with neck and back pain on an occasional basis since February 2003.
5. While at work on July 30, 2004, plaintiff was asked to tape axles so that a co-worker could paint them. As plaintiff bent down, she twisted and reached to place a bearing cap on the first axle. Upon doing so, plaintiff experienced a pain in her neck, which radiated down the middle of her back. Plaintiff also felt her entire left side go numb. After resting for a minute, *Page 4 
plaintiff reported the incident to her supervisor and obtained permission to present to the Emergency Room.
6. At the Emergency Room, plaintiff reported that she felt an onset of pain and numbness on her left side while attempting to tape axles at work.
7. On August 2, 2004, plaintiff presented to Dr. Adams, the chiropractor who had treated plaintiff for neck and back problems prior to her July 30, 2004 work injury.
8. On the same day, plaintiff also presented to her primary care physician, Dr. Stout, with complaints of low back and neck pain. Dr. Stout ultimately diagnosed plaintiff with age appropriate moderate spondylosis and recommended conservative treatment.
9. Dr. Stout referred plaintiff to Dr. Kenneth Wood, an orthopedic surgeon in Statesville, who examined plaintiff on August 23, 2004. Dr. Wood was unable to determine the etiology of plaintiff's left upper and lower extremity problems, but opined that plaintiff had degenerative changes of the cervical spine and that surgery was not an option.
10. Plaintiff worked on August 4, 2004, and attempted to return to work for defendant-employer in a light-duty capacity from October 11, 2004, through October 29, 2004. On October 29, 2004, defendant-employer notified plaintiff that it no longer had light-duty work available.
11. On January 19, 2005, plaintiff presented to Dr. Domagoj Coric, a neurosurgeon, for left-sided pain and spasms. Dr. Coric diagnosed plaintiff with a broad-based disc bulge at C5-6, and a possible spur at C6-7 causing foraminal stenosis in the cervical spine.
12. Plaintiff continued to experience low back and lower extremity pain with right sided shooting pain. Dr. Coric's physician's assistant, Mr. Beardsley, ordered a lumbar MRI *Page 5 
which revealed some spondylosis at L2-3 and L3-4, but no evidence of any central stenosis, disc bulge, or herniation.
13. A CT myelogram was taken which revealed disc bulges at C3-4 and C4-5 causing mild to moderate central stenosis.
14. Defendants denied plaintiff's claim for workers' compensation benefits with the filing of a Form 61 Denial of Workers'Compensation Benefits dated February 23, 2005. Subsequently, plaintiff filed a Form 33 Request That Claim Be Assigned forHearing, and the claim was scheduled for hearing before Deputy Commissioner John DeLuca on November 17, 2005.
15. On March 31, 2005, Dr. Coric performed an anterior cervical corpectomy at C6. Following the surgery, plaintiff participated in physical therapy at Davis Regional Medical Center.
16. On June 14, 2006, Dr. Coric's physician's assistant, Mr. Beardsley, ordered another MRI of the lumbar spine. The MRI was taken on August 21, 2006 and revealed mild relative narrowing of the lateral recesses at L4-5 and a minimal disc bulge at L3-4, similar to plaintiff's 2004 MRI.
17. On August 25, 2006, Deputy Commissioner Deluca issued an Opinion and Award in which he awarded, inter alia, temporary total disability benefits in the amount of $688.00 per week from July 31, 2004 through October 10, 2004, inclusive, and from October 29, 2004 and continuing; temporary partial disability benefits from October 11, 2004 through October 29, 2004; and accrued and future medical treatment related to plaintiff's compensable injury.
18. Defendants timely served notice of appeal of Deputy Commissioner DeLuca's decision. *Page 6 
19. The Full Commission heard this matter on February 7, 2007, and issued an Opinion and Award on April 4, 2007, holding that the July 30, 2004 incident caused only a temporary aggravation of plaintiff's pre-existing spondylosis, which had resolved by August 5, 2004. The Full Commission found that plaintiff failed to show that her disability after August 5, 2004 was caused by the July 30, 2004 incident. Although the Full Commission held that plaintiff was entitled to temporary total disability benefits from July 30, 2004 to August 5, 2004, defendants were not responsible for ongoing treatment of plaintiff's condition after August 5, 2004.
20. On April 12, 2007, plaintiff appealed the Full Commission's Opinion and Award to the North Carolina Court of Appeals.
21. Meanwhile, plaintiff continued to present for treatment of her neck and back condition. On October 12, 2007, plaintiff again presented to Dr. Coric, who opined that plaintiff's symptoms in her neck were consistent with an arthritic process and that there was no clinical evidence for radiculopathy or myelopathy. Dr. Coric released plaintiff from his care, advising her to return on an as-needed basis.
22. After submission of the Record on Appeal and briefs by both parties, the Court of Appeals heard this matter without oral argument on January 9, 2008.
23. On March 4, 2008, the Court of Appeals affirmed the Full Commission's Opinion and Award in a unanimous decision. Plaintiff did not appeal the Court of Appeals' decision to the Supreme Court of North Carolina.
24. Instead, on April 2, 2008, plaintiff filed a Form 33 Request That Claim Be Assigned For Hearing and an Amended Form 33 on May 12, 2008, pro se, alleging a change of *Page 7 
condition pursuant to N.C. Gen. Stat. § 97-47. This is the issue presently before the Industrial Commission.
25. On April 25, 2008, plaintiff returned to Dr. Coric's physician's assistant, Mr. Beardsley, who recorded that plaintiff reported her condition was "better than it was before surgery." Since plaintiff continued to experience some neck and back pain, Mr. Beardsley ordered another lumbar spine MRI. The lumbar spine MRI taken on May 28, 2008 revealed mild discogenic degenerative changes of the lower spine with mild canal stenosis at L4-5, but was otherwise normal.
26. On June 11, 2008, plaintiff again presented to Dr. Coric with continued neck and back pain but noted that she felt improved from her preoperative state. Plaintiff reported that her number one problem was now low back pain. Dr. Coric noted that plaintiff's imaging studies revealed mild diffuse spondylosis, without any specific disease.
27. On July 16, 2008, plaintiff returned to Dr. Coric, who found that plaintiff was experiencing chronic low back and lower extremity pain with no clinical symptoms consistent with myelopathy or radiculopathy, and no radiographic evidence for spinal cord compression.
28. On September 29, 2008, plaintiff presented to Dr. David Spivey, an anesthesiologist, for pain management. Dr. Spivey diagnosed plaintiff with lumbar and cervical degenerative disc disease. Dr. Spivey administered epidural steroid injections on September 30, 2008 and October 21, 2008. Thereafter, plaintiff underwent EMG/nerve conduction studies of the lower and upper extremities on October 8, 2008, with Dr. Richard Bey, a neurologist. The results of these studies were normal. *Page 8 
29. Plaintiff contends that she has experienced a change of condition as a result of her injury by accident on July 30, 2004. Plaintiff states that the change of condition continues to affect her earning capacity, preventing her from returning to suitable employment.
30. At the hearing before the Deputy Commissioner, the parties requested permission to submit questions to plaintiff's medical care providers: Dr. Kenneth Wood, Dr. Leo Young, Dr. Mark Williamson, Dr. David Hardaway, Dr. Trishwant Garcha, Dr. Dale K. Rader, Dr. Ronald Adams, Dr. Domagoj Coric, and Dr. E. H.Stout. Of these physicians, the following did not respond: Dr. Wood, as he had left the practice in September 2008; Dr. Mark Williamston, as he responded that he had referred plaintiff to another physician for treatment, and Dr. E. H. Stout, who declined to respond due to the length of time that had transpired since plaintiff had last presented to him.
31. Dr. Leo Young, a family practitioner, treated plaintiff from July 29, 2008 to August 21, 2009 and opined that plaintiff's condition had not changed since the July 30, 2004 incident. Dr. Young was unable to opine whether plaintiff's symptoms were related to the July 30, 2004 work incident.
32. Dr. David Hardaway, a urologist, treated plaintiff from September 17, 2008 to September 29, 2009, for urge incontinence and a neurogenic bladder, upon referral from Dr. Young. Dr. Hardaway opined that plaintiff's symptoms of urinary and fecal incontinence were consistent with neurogenic disease of the cervical or upper thoracic spine; however, testing to relate plaintiff's symptoms to her spine condition was inconclusive.
33. Dr. Trishwant Garcha, a clinical neurophysiologist, treated plaintiff from November 25, 2008 through March 30, 2009. Dr. Garcha was unable to opine whether plaintiff's condition was causally related to the July 30, 2004 work incident, or whether plaintiff *Page 9 
experienced a change of condition as he did not commence treatment of plaintiff until November 25, 2009.
34. Dr. Dale Rader, an orthopedic surgeon, who treated plaintiff from February 15, 2008 to June 23, 2008, opined that a traumatic injury could worsen or cause a change of condition of the abnormalities in plaintiff's spine.
35. Dr. Ronald Adams, a chiropractor, who treated plaintiff for cervical and lumbar complaints from February 2003 to August 2004, indicated that, because plaintiff had not presented for treatment since August 2004, he would defer to the opinions of plaintiff's orthopedic specialists.
36. Dr. Domagoj Coric, a neurosurgeon, treated plaintiff from January 19, 2005 to July 16, 2008, for cervical spondylosis/stenosis, back and neck pain, and upper and lower extremity pain. Dr. Coric opined that a traumatic injury could cause an asymptomatic structural problem, such as stenosis, to become clinically symptomatic.
37. The evidence of record reveals that prior to plaintiff's work injury on July 30, 2004, she complained of neck and back pain to her primary care physician, Dr. Elmer H. Stout, in October 1996, July 2003, and October 2003. Since her work injury of July 30, 2004, plaintiff has continued to experience neck and back pain. The evidence reveals, and the Full Commission finds, that plaintiff's cervical degenerative disc disease was not caused or materially aggravated by her work-related injury of July 30, 2004.
38. The Full Commission further finds that there is insufficient evidence of record to establish, by its greater weight, that plaintiff's current symptoms or disability are related to her work injury of July 30, 2004, or that she sustained a compensable change of condition under the North Carolina Worker's Compensation Act. *Page 10 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On July 30, 2004, plaintiff sustained a compensable injury by accident in the form of a specific traumatic incident, when she felt an onset of pain and numbness in her cervical spine while taping axles at work. N.C. Gen. Stat. § 97-2(6); Richards v. Town ofValdese, 92 N.C. App. 222, 374 S.E.2d 116 (1988), Fish v.Steelcase, 116 N.C. App. 703, 449 S.E.2d 233 (1994).
2. "Under the doctrine of res judicata or claim preclusion, a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." Whitacre Partnership v. Biosignia, Inc.,358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004).
3. The courts have held that this "law of estoppel applies in workers' compensation proceedings as in all other cases."Hughart v. Dasco Transp., Inc.,167 N.C.App. 685, 691, 606 S.E.2d 379, 383-84 (2005). The essential elements of res judicata are: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in the prior suit and the present suit, and; (3) an identity of parties or their privies in both suits. Bryant v. Weyerhaeuser Co.,130 N.C. App. 135, 138, 502 S.E.2d 58, 61, disc. rev. denied,349 N.C. 228, 515 S.E.2d 700 (1998). In the present matter, the issue of plaintiff's entitlement to further workers' compensation benefits for her cervical spine is the same as the issue decided by the Court of Appeals on March 4, 2008. In its decision, the Court of Appeals found that plaintiff failed to show that her *Page 11 
condition or disability after August 5, 2004 resulted from the July 30, 2004 incident. As such, plaintiff's claim for a change of condition claim has already been addressed.
4. Even if the issues before the Industrial Commission were not subject to the doctrine of res judicata, the evidence of record is insufficient to find that plaintiff experienced a change of condition pursuant to N.C. Gen. Stat. § 97-47. Pursuant to this Statute, the Commission may review an award of compensation upon application of any party on the grounds of a change of condition. A "change of condition" has been defined as a condition occurring after a final award of compensation that is different from the conditions existing at the time the award was made. Weaver v.Swedish Imports Maintenance, Inc.,319 N.C. 243, 354 S.E.2d 477 (1987).
5. The burden of proving a change of condition is on the party seeking the modification. The moving party must prove the existence of the new condition and that it is causally related to the compensable injury. Willis v. Davis Indus.,13 N.C. App. 101, 185 S.E.2d 28 (1971). In this case, plaintiff has failed to show that her present conditions are causally related to her compensable injury of July 30, 2004.
6. The Court of Appeals in Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003), "could or might" testimony is insufficient to establish medical causation in a workers' compensation claim. Edmonds v. Fresenius Med. Care,165 N.C. App. 811, 818, 600 S.E.2d 501, 506 (2004) (J. Steelman, dissenting), rev'd per curiam,359 N.C. 313, 608 S.E.2d 755 (2005).
 [O]nly an expert can give competent opinion evidence as to the cause of the injury. However, when such expert opinion testimony is based merely upon speculation and conjecture, . . . it is not sufficiently reliable to qualify as competent evidence on issues of medical causation. The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there *Page 12 
must be sufficient competent evidence tending to show a proximate causal relation.
Holley, 357 N.C. at 232, 581 S.E.2d at 753.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for a change of condition must be, and is hereby, denied.
2. Each side shall pay its own costs.
This the 19th day of January, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1